## CLARA HOWIE v. FRED GANGLOFF AND ANOTHER.[1]

December 24, 1925.

No. 24,918.

**Aged woman, with annual income of $200, a "poor person" within the statute.**

1. Under a statute imposing upon relatives the duty of supporting a "poor person," a mother far advanced in years, unable to earn a livelihood, without means other than annual rents of $200 and needing more than that for her maintenance, is a "poor person."

**When relative is not entitled to contribution from other relatives.**

2. A relative voluntarily furnishing support to such a poor person is not entitled to contribution from other relatives equally obligated by the statute. But such unaided support may not be voluntary where seasonable demand is made upon the other relatives for contribution and they refuse it.

1. See Paupers, 30 Cyc. p. 1065.
2. See Contribution, 13 C. J. p. 824, § 7.

Action in the district court for Goodhue county to recover for services in the care of an aged mother. The case was tried before Johnson, J., and a jury which returned verdicts in favor of plaintiff. Defendants appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*T. R. Johnson* and *Thomas Mohn*, for appellants.

*A. J. Rockne* and *Bentley & Christenson*, for respondent.

STONE, J.

Action by a sister against her two brothers upon a statutory obligation for the support of their mother. After separate but equal verdicts against each defendant, the latter appeal from the order denying their alternative motion for judgment notwithstanding the verdict or a new trial. The statute is G. S. 1923, § 3157, and imposes upon relatives in the order named, children first, the

[1] Reported in 206 N. W. 441.

duty of supporting "every poor person who for any reason is unable to earn a livelihood."

The mother departed this life at the age of 82 years in October, 1923. For much more than six years she had been cared for in the home of plaintiff. For two or three years prior to her decease she had been increasingly in need of constant personal attention. There is no question but that plaintiff gave it to her and was in all respects a dutiful daughter. The period covered by the complaint is fixed with necessary reference to the statute of limitations. It is made fairly clear that, for a much longer period, neither defendant had contributed a dollar to the support of their mother.

The first point for defendants is that the mother was not a "poor person" within the meaning of the statute. For authority they resort to such cases as Peters v. Town, 34 Conn. 264; Cabot v. St. Johnsbury, 94 Vt. 311, 111 Atl. 454; State v. Osawkee, 14 Kan. 418, 19 Am. Rep. 99, defining paupers or poor persons entitled to public support. Such cases and their definitions are not controlling here. We are not dealing with the rights of one claiming or given public support. Our statute applies to any poor person who for any reason is unable to earn a livelihood.

In this case the mother, during all of the period in question, may well be considered to have been in that condition. She did receive a yearly rental from her son, defendant Fred Gangloff, for his use, as we understand it, of the 80 acres in which the mother had a life estate, her husband, the father of the parties to this unfortunate quarrel, having died years ago. That rent when paid amounted to $200. Its inadequacy to support the mother is too obvious for comment. That would be so even if it had always been paid, which was not the case. One year defendant Fred Gangloff added a porch to the farm house, and, notwithstanding that it was for his convenience and benefit and not in any way for that of the mother, he deducted from her rent of that year the cost, $95. In that situation, one of the arguments advanced on behalf of himself and his brother comes with bad grace. It is to the effect that the mother's indigence during her declining years was due to possible and sug-

gested mismanagement of her affairs in that she did not exact a larger and more adequate rental from her son.

These observations are sufficient to indicate why it was for the jury to say whether the mother, during the time in question, was a "poor person," within the meaning of the statute. The only other point deserving consideration is whether the support furnished by plaintiff was voluntary within the construction placed upon the statute in Manthey v. Schueler, 126 Minn. 87, 147 N. W. 824, Ann. Cas. 1915D, 251, where it was held that "there cannot be a recovery for services or support voluntarily given." Plaintiff's evidence, believed as it was by the jury, makes it clear that she repeatedly told defendants that the $200 annual rental "was not enough to take care of her with," that in reply they said "that was all they would give," and not a dollar did they given in addition. Clearly it was a jury question, to say the least, whether plaintiff was acting "voluntarily" in the sense that we are now considering. Her demand upon her brothers and their refusal are established by evidence and verdict. So we cannot question the involuntary character for present purposes of plaintiff's unaided support of her mother.

In connection with this point, the assignment of error predicated upon the charge is without merit. The jury were told that if they found that plaintiff "took the mother into her home and kept her there and supported her as a gratuity without any expectation of getting contribution from the defendants," they should return a verdict for the latter. If counsel thought the subject should have been gone into more explicitly, they ought to have invited attention to it at the time.

The other assignments of error are without merit. The evidence so far sustains the verdicts as to amount that we are not at liberty to interfere. The sum of the two is substantially less than two-thirds of the total value, as shown by the evidence, of the maintenance furnished by plaintiff to the mother during the years in question.

Affirmed.